UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
AMBER DANIELS and ANTHONY WADE,

                    Plaintiffs,

           -against-

CITY OF NEW YORK, Police Officer JON
GLADSTONE, Shield No. 5165, Police Officer
JOHN/JANE DOE 1-10, individually,

                    Defendants.
------------------------------------------------------------------ x

**COMPLAINT**

Jury Trial Demanded

## NATURE OF THE ACTION

1. This is an action to recover money damages arising out of the violation of Plaintiff Amber Daniel's and Plaintiff Anthony Wade's ("Plaintiffs") rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

## JURISDICTION AND VENUE

2. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

3. This Court's jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c). The incident in question took place in this District in Kings County.

1

## JURY DEMAND

5. Plaintiffs demand a trial by jury in this action pursuant to Federal Rule of Civil Procedure ("FRCP") 38.

## PARTIES

6. At the time of the herein described incident Plaintiffs were residents of Kings County and both Plaintiffs remain residents of Kings County.

7. Defendant City of New York was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant City of New York maintains the New York City Police Department (hereinafter "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, the City of New York.

9. Defendant NYPD Officer Jon Gladstone and NYPD Officers John/Jane Doe 1-10 were duly sworn officers, employees and agents of said department at all times relevant herein and were acting under the supervision of said department and according to their official duties. Officer Defendants are sued in their individual capacities.

10. That at all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

11. Each and all of the acts of the Defendants were done by said Defendants while acting within the scope of their employment by Defendant City of New York.

## STATEMENT OF FACTS

12. On the morning of July 17, 2014, Plaintiffs were sleeping in an apartment bedroom at 192 Sands Street.

13. Ms. Daniels's six-year-old son J., Mr. Wade's fifteen-year-old son M., and an eight-or-nine-year-old Wade family member were sleeping in the apartment at the time as well.

14. Ms. Daniels did not reside in the apartment or have any possessory interest in the apartment. She and her six-year-old son J. were guests.

15. At approximately 7:00 a.m., Plaintiffs woke up to find six to eight of Defendant Doe Officers in the bedroom where they slept with numerous firearms pointed at them.

16. One of Defendant Doe Officers shouted, in sum and substance, "[w]here are the guns, where are the drugs?"

17. There were no firearms or drugs in the apartment.

18. Ms. Daniels had been sleeping in a light negligee that revealed much of her otherwise naked body when Defendant Doe Officers entered the apartment. Ms. Daniels requested permission to put another layer of clothing on top of the negligee in order to cover her body.

19. Defendant Doe Officers refused to allow Ms. Daniels to change. Defendant Doe Officers stated that they would not permit Ms. Daniels to cover her near-nude body unless a female officer was present, which at the time there was not.

20. Thus the purported "policy" of requiring a female officer to be present before allowing a near-nude female arrestee—here, Ms. Daniels—to cover her nakedness, presumably designed in order to protect the female arrestee's dignity, had the perverse effect of subjecting Ms. Daniels to great indignity.

21. Ms. Daniels stated that one of Defendant Doe Officers could himself select any piece of clothing he wished from the apartment so that Ms. Daniels could put it on at that moment or at a future moment when a female police officer was present. Defendant Doe Officers refused.

22. Mr. Wade's mother also lived in the building at 192 Sands Street. She came and took custody of the children.

23. When Mr. Wade asked to see the search warrant which justified Defendant Doe Officers' entry into the apartment, he was told that the raid occurred

as a result of an "anonymous telephone call."

24. If a search warrant existed, Defendant Doe Officers refused to show it to Plaintiffs.

25. Defendant Doe Officers removed Ms. Daniels and Mr. Wade from the apartment and placed them in a police vehicle.

26. The entire time Ms. Daniels was held in the police vehicle she was still in her negligee with her body exposed to Defendant Doe Officers and civilian passersby.

27. Ms. Daniels and Mr. Wade sat in a police vehicle outside 192 Sands Street for roughly two to three hours while Defendant Doe Officers searched the apartment using canines.

28. Defendant Doe Officers caused significant property damage to the apartment and its contents in the process.

29. Defendant Doe Officers found nothing illegal in the apartment.

30. Defendant Doe Officers arrested Ms. Daniels and Mr. Wade and took them to the 88th precinct.

31. Defendant Doe Officers placed Ms. Daniels in a cell. Ms. Daniels was still in her light negligee with her body greatly exposed when Defendant Doe Officers placed her in the cell and Ms. Daniels was forced to remain solely in the negligee for a significant portion of the time she stayed in the cell.

32. Ms. Daniels remained in the cell for approximately five hours. It was

only after two or three hours that a police officer gave Ms. Daniels a sweater.

33. Ms. Daniels attempted to cover herself as best she could with that one piece of clothing but remained exposed and humiliated.

34. Meanwhile, Defendant Doe Officers interrogated Mr. Wade.

35. Defendant Doe Officers asked Ms. Daniels questions as well.

36. Defendant Doe Officers released Ms. Daniels from the precinct and she was never charged with any offense.

37. Defendant Gladstone falsely alleged that he and/or Defendant Doe Officers had found a single marijuana cigarette during their search of the apartment. This was not true.

38. Relying upon the false allegation of the single marijuana cigarette, Defendant Gladstone issued Mr. Wade a Desk Appearance Ticket for narcotics possession and released him from the precinct.

39. On information and belief, Defendant Gladstone made the false allegation regarding the marijuana cigarette in an effort to justify the unconstitutional searches and seizures Defendant Doe Officers committed against Plaintiffs that day which had yielded no evidence of criminal activity whatsoever.

40. When Mr. Wade and Ms. Daniels returned to the apartment at 192 Sands Street, they found that NYCHA had bolted the apartment door.

41. Motivated by the events of July 17, 2014, NYCHA indicated its intent to

initiate a suit against Mr. Wade's family in order to take the apartment from their possession.

42. In December 2014 the state court dismissed the DAT marijuana possession charge against Mr. Wade.

43. From the date of Plaintiff's July 17, 2014 false arrest through February 2015, NYCHA kept the apartment at 192 Sands Street locked with Mr. Wade and Ms. Daniels's possessions inside.

44. Mr. Wade and Ms. Daniels were not permitted to retrieve any of their belongings which had been in the apartment at 192 Sands Street and had to do without them or replace them during that period.

45. Plaintiffs suffered damages as a result of Defendants' actions, including deprivation of their liberty, damage to their reputations, extreme humiliation (particularly in the case of Ms. Daniels), deprivation of shelter, emotional trauma, deprivation of a fair trial, and more.

46. All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees, and due to a custom, policy and/or practice of: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of

justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

47. The aforesaid incident is not an isolated incident. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as documented in civil rights actions filed in the United States District Courts in the Eastern and Southern Districts of New York as well as in New York State courts. As a result, Defendant City of New York is aware (from said lawsuits as well as notices of claims and complaints filed with the NYPD's Internal Affairs Bureau and the CCRB) that many NYPD officers, including the Defendants, arrest individual persons in order to meet productivity goals and arrest quotas; arrest individuals for professional advancement, overtime compensation and/or other objectives outside the ends of justice; and/or falsely arrest individuals and engage in a practice of falsification of evidence in an attempt to justify the false arrest.

48. The Honorable Jack B. Weinstein, United States District Judge for the Eastern District of New York, has written that

> [i]nformal inquiry by the [C]ourt and among judges of this [C]ourt, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the

8

> [NYPD] . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the [C]ity approving illegal conduct of the kind now charged.

Colon v. City of N.Y., Nos. 9 Civ. 8, 9 Civ. 9, 2009 WL 4263362, at *2 (E.D.N.Y. November 25, 2009).

49. Former Deputy Commissioner Paul J. Browne, as reported in the press on January 20, 2006, stated that NYPD commanders are permitted to set "productivity goals," permitting an inference of such a custom or policy encouraging deprivations of individuals' constitutional rights in cases such as this one.

50. Defendant City of New York is thus aware that its improper training and customs and policies have often resulted in a deprivation of individuals' constitutional rights. Despite such notice, Defendant City of New York has failed to take corrective action. This failure caused Individual Defendants in this case to violate Plaintiffs' constitutional rights.

51. Moreover, on information and belief, Defendant City of New York was aware, prior to the incident, that the Individual Defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed as police officers. Despite such notice, Defendant City of New York has retained these officers, and failed to adequately train and supervise them.

52. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

53. All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.

54. The acts complained of were carried out by the aforementioned Individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures and the rules of the Defendant City of New York and the NYPD, all under the supervision of ranking officers of said department.

55. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

56. As a result of the foregoing, Plaintiffs are entitled to compensatory and punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## FIRST CLAIM
## 42 U.S.C. § 1983

57. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

58. Defendants, by their conduct toward Plaintiffs alleged herein, violated Plaintiffs' rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

59. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

60. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CLAIM
## FALSE ARREST

61. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

62. Defendants violated the Fourth and Fourteenth Amendments because they arrested Plaintiffs without cause.

63. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

64. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## THIRD CLAIM
## MALICIOUS PROSECUTION

65. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

66. Defendants violated Mr. Wade's right under 42 U.S.C. § 1983 to be to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

67. Defendants' prosecution of Mr. Wade constituted malicious prosecution in that there was no basis for Mr. Wade's arrest, yet Defendants continued with malice with the prosecution, which was resolved in Mr. Wade's favor.

68. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Mr. Wade of his constitutional rights.

69. As a direct and proximate result of Defendants' unlawful conduct, Mr. Wade sustained the damages hereinbefore alleged.

## FOURTH CLAIM
## FABRICATION OF EVIDENCE AND DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL

70. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

71. The Individual Defendants created false evidence against Plaintiffs and Individual Defendants also forwarded it to prosecutors in the District Attorney's Office in the case of Mr. Wade.

72. In creating false evidence against Plaintiffs likely to influence a jury's decision, and in forwarding false evidence to prosecutors, the Individual Defendants violated Plaintiffs' constitutional right to a fair trial under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

73. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

74. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CLAIM
## FAILURE TO INTERVENE

75. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

76. Individual Defendants actively participated in the aforementioned unlawful conduct but also observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

77. Accordingly, Individual Defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

78. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive Plaintiffs of their constitutional rights.

79. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## MONELL CLAIM

80. Plaintiffs repeat and re-allege each of the preceding allegations contained in this Complaint with the same force and effect as if fully set forth herein.

81. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or

rule of the respective municipality/authority, which is forbidden by the United States Constitution.

82. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of Plaintiffs' rights as described herein. As a result of the failure of the Defendant City of New York to properly recruit, screen, train, discipline and supervise its officers, including the Individual Defendants, Defendant City of New York has tacitly authorized, ratified and has been deliberately indifferent to, the acts and conduct complained of herein.

83. The aforementioned customs, policies, usages, practices, procedures and rules of Defendant City of New York and the NYPD included, but were not limited to: arresting innocent persons in order to meet "productivity goals," or arrest quotas; arresting individuals for professional advancement, overtime compensation, and/or other objectives outside the ends of justice; and/or manufacturing false evidence against individuals in an individual effort and also in a conspiracy to justify their abuse of authority in falsely arresting, unlawfully stopping and maliciously prosecuting those individuals.

84. The foregoing customs, policies, usages, practices, procedures and rules of the Defendant City of New York and the NYPD constituted deliberate indifference to Plaintiffs' safety, well-being and constitutional rights.

85. The foregoing customs, polices, usages, practices, procedures and rules of Defendant City of New York and the NYPD were the direct and proximate cause of the constitutional violations suffered by Plaintiffs as described herein.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs respectfully request the following relief:

A. An order entering judgment for Plaintiffs against Defendants on each of their claims for relief;

B. Awards to Plaintiffs for compensatory damages against all Defendants, jointly and severally, for their violation of the Fourth, Fifth, Sixth and Fourteenth Amendment rights of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

C. Awards to Plaintiffs of punitive damages against Defendants on the basis of their conscious wrongdoing and callous indifference to the constitutional rights and welfare of Plaintiffs, the amount to be determined at jury trial, which Plaintiffs respectfully demand pursuant to FRCP 38;

   D. Awards to Plaintiffs of the costs of this action, including reasonable attorneys' fees;

   E. Such further relief as this Court deems just and proper.

DATED: January 13, 2016
     New York, New York

              /s
             Ryan Lozar
             305 Broadway, 9th Floor
             New York, New York 10007
             (310) 867-1562
             ryanlozar@gmail.com

             *Attorney for Plaintiff*