The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



November 11, 2016

Re: <u>Daniels, et al. v. City of N.Y., et al.</u>, No. 16 Civ. 190 (PKC) (JO)) (EDNY)

Dear Judge Orenstein:

I am Plaintiffs' counsel in the above-captioned case and I submit this letter motion to compel Defendants to produce outstanding discovery. Plaintiffs have served Defendants with deficiency letters addressing these issues on August 30, 2016, September 8, 2016, and October 12, 2016. The Parties then communicated via email and in at least five lengthy telephone calls about the deficiencies. I received sporadic supplemental productions as a result of these conferences, but truly complete productions never came. As recently as last week Thursday, the outgoing ACC on the case represented to me that he would serve a significant production by the close of business Friday, November 4, 2016, and I believed that this production would achieve the long-promised satisfaction of the outstanding undisputed discovery. As I write this, one week later, I have still received no additional productions from the first ACC or his successor. Last Friday, I conferred by telephone with the incoming ACC Tobias Zimmerman about the troubling holes in discovery even as I negotiated with the outgoing ACC for the production that I hoped would fill them. I sent emails to Mr. Zimmerman this week about the ongoing problem and third-party discovery. I have told Mr. Zimmerman that I would file this motion. I will serve him with it by hand and email because no one has made a Notice of Substitution.

What follows is a list of the discovery that Plaintiffs move to compel. I will file a second motion to compel early next week that addresses confidential informant issues. In that letter motion I will include mutually agreeable dates for an in-person conference in that letter and, to the extent that Defendants cure some of the outstanding discovery issues between now and then, I will update the Court on the narrowed issues.

I. **Memo Books**

Defendants have failed to produce Memo Books for investigation-related and search-warrant related events. Many of these were the subject of the Court's September 15, 2016, Order granting Plaintiffs' September 9, 2016, Motion to Compel. <u>Docket Nos. 35, 37</u>. Others were not because Defendants never disputed that they had an obligation to produce them.

For example, Plaintiffs seek non-party Detective Abreu's Memo Books. He investigated the complaint against Apartment 12B when it was originally made and he knew that ACS chose not to investigate the portion of the complaint that alleged that Apartment 12B was also the location of a sex trafficking ring involving a special needs child. DEF61. (Plaintiffs are also seeking the complaint itself.) Next, Detectives Slavinsky, Bourne, Tulloch, Lodico, Valentin, McCullough, Gordon, Marin, Baez and Lloyd, and Captains Valenzano and Whitaker, were present for buy attempts and/or the execution of the search warrant, yet Defendants have not produced their statements about the incident and its preamble. DEF1, 67, 71, 73, 78, 80. As just one example of the relevance of these records, Detective Gordon conducted a K-9 sweep of Apartment 12B during the search warrant's execution and found Apartment 12B negative for contraband. Assuming, <u>arguendo</u>, that Defendants had cause to search in the first instance (which Plaintiffs contest, arguing that the evidence will rebut the presumption

of cause that arises when a warrant is obtained), Detective Gordon's memo book is relevant to Plaintiffs' claim that Defendants unreasonably continued to ransack and destroy Apartment 12B after their cause to believe it contained contraband dissipated.

## II. Buy Records, Voucher Tracking Records And NYPD Lab Reports

Plaintiffs have long pleaded that Defendants produce, as they agreed they must, buy logs and reports that Defendants completed contemporaneously with the allegedly successful confidential informant buys, voucher tracking records and NYPD lab reports. See, e.g., DEF80 (referring in a DD5 to a specific buy log by number). Some of these records were the subject of the Court's September 15, 2016, Order. Others were not because Defendants did not dispute that they would be produced.

These records are collectively vital to Plaintiffs' argument that Defendants did not truthfully represent to a magistrate that facts supported the belief that Apartment 12B was the location of a drug trafficking operation. Defendants alleged in documents and affidavits that they used a confidential informant to make successful buys in this case; that that informant was registered; and that they gave the informant PRBM to make the controlled buys. Defendants have since told Plaintiffs that they actually used at least three confidential informants and that there are no PRBM records in existence.

The buy records are relevant for the simple fact that they are Defendants' contemporaneous statements about events challenged by this litigation. The lab reports are requested because Defendants have stated that they sent seized substances to the NYPD lab for confirmation that it was a narcotic or controlled substance. Yet at this writing, Defendants have only produced alleged field test reports making conclusions about the substances. Finally, when evidence and property is vouchered, its movement is tracked in the Property and Evidence Tracking System (PETS). The evidence and/or property's unique bar code is scanned during transport from one place to another to record chain of custody. Plaintiffs want these records to learn the fact of the substances' transport to the NYPD lab as well as the timing of that transport.

## III. Command Log Entries, Roll Calls And Vehicle Assignment Sheets

The command log, roll calls and vehicle assignment sheets are relevant to the identification of officers who are important non-party witnesses. For example, Plaintiffs have repeatedly asked for the identities of the uniformed 88th Precinct officers who performed a June 2, 2014, ruse visit at Apartment 12B. DEF70. Roll calls will reveal who worked that tour such that minimal inquiry would permit the individuals' identification. Furthermore, roll call from the date of the search warrant will indicate who was present such that their statements can be reasonably pursued in discovery. In addition, the Parties can use the command log to see which vehicle transported Plaintiffs to the precinct, then reference the vehicle assignment sheet to learn who drove it.

## IV. Disciplinary Indices And Records

In late September 2016 or early October 2016, Defendants requested that the new ACC defend Defendants' depositions. I agreed, served deposition notices for Defendants Gladstone (Nov. 30), Baez (Dec. 1), and Anghel (Dec. 9), and continued to press for the officers' disciplinary indices and files so

that the noticed depositions would not need to be delayed due to the absence of these records. These records were the subject of the August 30, 2016, deficiency letter and the subsequent deficiency letters as well. On September 14, 2016, the Court entered the necessary Order of Confidentiality for the records' production at the Parties' request. Docket No. 37. Defendants promised that these records, like the other undisputed records that are the subject of this motion, would be produced many times, with the most recent representation being that they would be served on or before November 4, 2016.

### V. SPRINT Reports, Event Chronology Reports And/Or Their Equivalents

Among other things, Plaintiffs allege that Defendants unreasonably executed the search warrant. Plaintiffs allege that a K-9 unit cleared the residence immediately, yet Defendants ransacked the home for hours. Video footage shows the damage that Defendants caused, but SPRINT reports and/or their equivalents will document whether and to what extent Plaintiffs' claims about the search timeline (its length as well as the timing of various events) are supported by contemporaneous communications records.

### VI. So-Called Monell Discovery

Plaintiffs have requested records relating to the City's police officer training materials, protocols and/or guidelines that explain PRBM requirements in connection with a MOS's direction of a confidential informant controlled buy (copying of bills, recording serial numbers, comparing serial numbers on seized currency against the PRBM numbers). Defendants object that this is Monell discovery, but these records actually go to the heart of Plaintiffs' claims of Individual Defendant liability. In order for Plaintiffs to effectively argue to a jury that Defendants' failure to follow PRBM rules was unreasonable, Plaintiffs must educate a jury as to what the rules are, whether they are mandatory or discretionary, and what assurances of confidential informant reliability they are meant to protect. In the same vein, Plaintiffs have requested records regulating officers' use of K-9s during the search of a residence and the significance, if any, of a K-9 clearing the residence. Plaintiffs have also requested records relating to whether the City's confidential informant compensation schemes permit officers to pay informants' double when they report a positive buy, thereby incentivizing one outcome over another.

Thank you in advance for your consideration.

Sincerely,

/s/ Ryan Lozar

Ryan Lozar

Cc: Tobias Zimmerman, Esq., by hand and email