UNITED STATES DISTRICT COURT
EASTERN DISTICT OF NEW YORK
------------------------------------------------------------------------x

AMBER DANIELS, et. al.,

                            Plaintiff,

        -against-

CITY OF NEW YORK, et al.,

                      Defendants.

**DECLARATION OF THOMAS GALATI**

16-CV-0190 (PKC) (JO)

------------------------------------------------------------------------x

STATE OF NEW YORK    )
                         : SS.:
COUNTY OF NEW YORK   )

     I, THOMAS GALATI, being duly sworn, declare that the following statements are true and correct:

     1.     I am the Chief of Intelligence of the Intelligence Bureau for the New York City Police Department ("NYPD"). In this role, I am the highest ranking uniformed officer in the NYPD Intelligence Bureau, and have overall responsibility for its various units. The NYPD Intelligence Bureau gathers and analyzes information to assist in the detection and prevention of unlawful activity, among other things.

     2.     I have been a member of the NYPD for over 31 years. In 2006, while holding the rank of Deputy Chief, I was appointed Commanding Officer of the NYPD Intelligence Bureau. In December 2008, I was promoted to Assistant Chief, and continued to serve as Commanding Officer. Most recently, I was promoted to Chief of Intelligence in June 2013, and continue to serve in this role to date.

     3.     Prior to becoming the Chief of Intelligence of the Intelligence Bureau, I held various ranks and commands over the course of my 31-year career with the NYPD. Some of the

1

more prominent positions and corresponding ranks include: Deputy Chief and Commanding Officer of the Gang Division, Inspector and Commanding Officer of the 46th Precinct, Deputy Inspector and Commanding Officer of the 47th Precinct, Captain and Commanding Officer of the Bronx Anti-Crime Unit, Captain and Commanding Officer of the Bronx Tracer Unit, and Lieutenant and Platoon Commander of the Street Crime Unit.

4.     In every supervisory position that I have held, I have overseen members of the NYPD who directly handle confidential informants.  This declaration is based on my personal knowledge, as well as information provided by other employees of the NYPD, and upon the records of the NYPD, which I believe to be true and accurate.

5.     I submit this declaration to address the breach of the integrity and confidentiality of the identity of the Confidential Informant ("CI") in this matter which could result from providing to the Court, *in camera,* the "file or folder" pertaining to this CI, which contains, among other things, but most significantly - Police Department Form 378-161 entitled Confidential Informant Registration/Reactivation Request, accompanied by a photograph of the CI.

6.     As a preliminary matter, the term CI "file or folder" is the Court's terminology and not that of the NYPD Intelligence Bureau.  A small unit of the NYPD Intelligence Bureau maintains various documents that pertain to CIs, but there is no singular "file or folder" which contains all the documents related to a CI – such as case specific information about a CIs involvement in investigations conducted by other divisions and bureaus of the NYPD.  Rather, as is the case here – the documents maintained by the Intelligence Bureau include the CI's registration information (his or her real identity), quarterly reviews, and perhaps some payment information.

2

7.	The NYPD maintains CIs who are critical to receiving actionable intelligence relating to criminal activity within New York City. CIs often interact with persons who are known criminals, including narcotics traffickers, gang members, illegal firearm dealers, and persons who seek to do physical harm to others.

8.	The NYPD goes to great lengths to keep the names of CIs confidential, in order to maintain their safety. It is self-evident that discovery or knowledge that a civilian is a CI who is providing or has provided intelligence to the NYPD can have serious safety consequences for such a CI.

9.	In the past, CIs have been physically harmed after their status was discovered. Even following the conclusion of a particular investigation, the threat of discovery and retaliation against a CI remains a serious concern. Moreover, as CIs often provide information in more than one instance, their safety always remains a continuing priority. In fact, the identity of a CI is concealed from other members of the NYPD and is only revealed on a 'need to know' basis.

10.	I understand that in this civil case, the identity of a Confidential Informant will be revealed to the Court without any of the protections the NYPD offers where the Court compels such production in a civil case. Indeed, when forced to provide such information to a court in the past, NYPD procedures have dictated that the Detective delivering such sensitive information to the Court stand by while the Court conducts its review, and then leave with the original documents.

11.	In this case, such request to maintain the integrity of the identifying information of a CI contained within NYPD documents was denied by the Court. Thus, in departing from procedure, the NYPD can no longer completely ensure the integrity of the CI's identifying information, as they are now no longer its sole custodian.

3

12.    The NYPD will have no way of knowing how many individuals the Court will allow to view this information, even accidentally, as this information can be copied or viewed by any number of people in the Eastern District of New York Federal Court. Obtaining such information could lead to the intentional or inadvertent leak of the identity of a CI.

13.    Given the gravity of this situation, the departure from the protections originally offered now requires that this breach be internally memorialized in a Field Intelligence Report in order to protect the CI and the NYPD.

14.    I understand that this is a civil case in which the plaintiffs are seeking money damages. It is important to note, that even in criminal matters, a CIs identity is not routinely provided to any court.

15.    To be specific about this case, the CI here has been an asset to the Intelligence Bureau for over a decade. Now, the NYPD is being compelled to disclose without any protections, documents which contain not only the photograph and real name of this long-standing confidential informant, but which also contain information such as the CI's full name, age, date of birth, family information (including, if applicable, information about the CI's spouse), address, phone number(s), email address(es), physical description (e.g., height, weight, sex, race, etc.), identification numbers (e.g., social security number, NYSID, FBI number, etc.), the CI's code name, and a description of the type of knowledge the CI possesses, including the geographic area (e.g., neighborhood) that his or her knowledge encompasses.

16.    In sum, the disclosure of the real identity of a CI who has entrusted the NYPD to maintain his or her real identity confidential has serious risks attached, regardless as to whom it is being disclosed. Any release of this CI's identity, even if by accident, presents a grave risk to the CI's safety. Anyone who has or discovers the CI's name could potentially use that

information to obtain the CI's current location and do him/her harm, either personally, or by disseminating the information to the community in which the CI provides information.

17.     Furthermore, the risk to the general public is also present. Any release of this CI's information may inhibit future cooperation of this or other potential CIs; for fear that the NYPD cannot uphold its legal and moral duty to ensure the confidentiality of the identity of civilians who cooperate with law enforcement.


Dated: New York, NY
           January 10, 2017

Thomas Galati