The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



January 12, 2017

Re: <u>Daniels, et al. v. City of N.Y., et al.</u>, No. 16 Civ. 190 (PKC) (JO)) (EDNY)

Dear Judge Orenstein:

    I am Plaintiffs' counsel in the above-captioned Section 1983 case alleging, among other things, that Defendants violated their Fourth Amendment rights through the performance of an unlawful search. Plaintiffs allege that Defendants sought and obtained a search warrant knowing that they were unreasonably relying upon an untrustworthy informant's claims that s/he recovered crack cocaine from Plaintiffs' apartment.

    I write to request an extension of fact discovery in response to Defendants' newly-released NYPD Lab report finding that a substance that a CI allegedly told Defendants s/he allegedly bought from Plaintiffs' apartment was not a controlled substance under New York State law. The timing of Defendants' production one week ago has greatly prejudiced Plaintiffs' ability to properly develop an evidentiary record relating to such an extraordinary document. Defendants released the record on the eve of Defendants' depositions and on the eve of the close of fact discovery. I took Defendants' depositions despite the prejudicial circumstances (they concluded on Tuesday evening), but Plaintiffs would now like an opportunity to gather the paper discovery they previously had no reason to know they would need.

    In light of the foregoing, Plaintiffs respectfully request that the Court (1) vacate the existing January 16, 2017, fact discovery deadline; (2) permit Plaintiffs to formulate and serve supplemental document requests and interrogatories in response to the newly-released report; (3) permit Plaintiffs to notice a supplemental expert in response to the newly-learned report; and (4) set a new deadline for the close of discovery during the Parties' January 25, 2017, status conference on confidential informant discovery. If the Court grants Plaintiffs' motion, Plaintiffs will serve the discovery requests and notice the expert next week or sooner so that the Parties can fully discuss any related disputes with the Court on January 25, 2017.

    I. **Exceptional Circumstances Are Present To Justify The Extension Of Expert And Fact Discovery Because Defendants' Delayed Release Of The NYPD Lab's "Not A Controlled Substance" Finding Has Thwarted Plaintiffs' Ability To Collect Related Paper And Expert Discovery**

    The reason I am making this extension request at this time is because it was only last week Wednesday, on the eve of Defendants' depositions and a week away from the close of discovery, that Defendants produced an NYPD Lab Report finding that lab technicians concluded that the "crack cocaine" recovered during one of two "positive" controlled buys was not a controlled substance under New York law.

    Plaintiffs argue that Defendants' late-stage production of such a material document creates exceptional circumstances justifying a reasonable extension of the discovery period. The timing of the report's release is particularly unfair because other contemporaneously-created NYPD Lab Reports were produced to Plaintiffs nearly one month earlier, on December 6, 2016. At the same time, the

extraordinary nature of the report is not something that Plaintiff could have anticipated. Unfortunately, the timing of Defendants' production of the report denied Plaintiffs of reasonable time to collect related paper discovery in advance of Defendants' depositions. With this motion, Plaintiffs request that the Court not let the timing of the report's release deprive Plaintiffs of related paper discovery altogether.

II. **Plaintiffs' Discussion Of Some Of The Discovery That They Will Seek In Supplemental Document Requests, With Reference To Defendants' Relevant Deposition Testimony**

To provide a first example of what this supplemental discovery might entail, Plaintiffs note that the report's production did not include supporting lab records. For example, Plaintiffs will request that Defendants produce the Controlled Substances Analysis Worksheet, which is a document recording at great length the lab technician's observations and findings about a substance's appearance, test reactions and likely nature before drawing his or her final conclusion.

While the final report's "no controlled substance" conclusion is very simply stated, the Controlled Substances Analysis Worksheet is a trove of information that the lab technician, who is a likely fact witness, may need to use to refresh his or her recollections about the lab work that supported the conclusion. It is also information that an expert witness (for whom Plaintiffs are preparing to serve Defendants with notice) would need to formulate an independent opinion about the substance and its likely reactions when field tested.[1]

In addition, because the report revealed a discrepancy in narcotics evidence, on information and belief, this causes the generation of related departmental paperwork which is then forwarded to integrity monitoring units for investigation. Plaintiffs would now like to request Defendants' statements about the incident in these contexts as well (to the extent that statements were made).

Next, the production of the "no controlled substances" report has given rise to questions about many interconnected matters, for example, field tests. Plaintiffs have begun to formulate document requests relating to departmental field-test product records and will be ready to serve them shortly.

When I asked Defendants at deposition about the challenged field test's manufacturer, brand and type, which is all information that I need to meaningfully consider the positive field test of a substance that the lab tested negative, I learned that I will not be able to glean those facts from the positive field test's physical packaging. That is because Defendants testified that they <u>threw the positive field test into the garbage</u>, rather than voucher it and send it to the NYPD lab along with the balance of the alleged contraband. Defendants' destruction of this evidence means that Plaintiffs will have to learn about the manufacturer and brand of the field test through other channels (for example, departmental or precinct purchase records).

Another aspect of discovery that Plaintiffs wish to pursue relates to field-test training materials. On the search warrant application at issue in this case, Defendants represented that they forwarded the material that field tested positive for crack cocaine to the NYPD Lab for further testing. Yet Defendants testified that they were not responsible for requesting such lab analysis; that they were not responsible

---

[1] Depending on the level of detail in the Controlled Substances Analysis Worksheet, it is my understanding that the expert witness that Plaintiffs will notice may not need to perform an independent inspection of the material.

for asking the responsible party to request such lab analysis; and that they did not even know what the steps for requesting such lab analysis entailed.

If field-test training materials show Defendants' testimony to be true, and they were not trained to request follow-up lab work (Defendants testified that they were re-trained in field testing as recently as 2014), then the City's failure to train NYPD Officers in this regard is relevant to Plaintiffs' Monell claim. In contrast, if field-test training materials show that the City did instruct Defendants to request follow-up labs to corroborate a CI's reliability, but Defendants disregarded the training even as they told the magistrate that they had followed it, this would be extremely relevant to Plaintiffs' claims relating to Defendants' individual liability.

Finally, it is worth noting that Defendants also testified that they knew that field tests can result in false positives depending on variables such as substance age or extreme temperatures in the environment where the test is performed. Defendants appeared to offer this testimony as an explanation for why they are not liable in this case, but the testimony actually confirms that Defendants were on ample notice of a field test's more proper role as initial screening of a substance, and not as conclusive proof of a substance's composition. Plaintiffs' intended requests for the field test materials will seek to gather the evidence necessary to support this theory of their case.

### III. Conclusion

In light of the foregoing, Plaintiffs respectfully request that the Court (1) extend the January 16, 2017, fact discovery deadline; (2) permit Plaintiffs to formulate and serve supplemental document requests in response to the newly-learned information; (3) permit Plaintiffs to notice an expert in response to the newly-learned information; and (4) set a new deadline for the close of discovery during the Parties' January 25, 2017, status conference.

Finally, I note that although I cannot provide the Court with Defendants' complete position on this motion at this time (Mr. Zimmerman has left the office until January 16, 2017, and has not answered my related correspondence), I can represent to the Court that in my last communication with Mr. Zimmerman on Tuesday he indicated that he would favor an extension of discovery because he was considering a deposition of non-party fact witness Emma Wilkinson, who is Anthony Wade's mother. In addition, Mr. Zimmerman's out-of-time reconsideration motion relating to confidential informant discovery had already caused pretrial to extend beyond the deadline. Even if Mr. Zimmerman would object to this petition despite all of this, in light of the fact that the extraordinary circumstances justifying the extension application are of his own making and were meant to cause Plaintiffs prejudice by unfairly depriving them of discovery, I argue that Defendants should be precluded from claiming any prejudice relating to the reasonable taking of it that I propose here.

Thank you for your time and attention.

Sincerely,

Ryan Lozar