UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------

AMBER DANIELS, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK, et al.,

Defendants.

------------------------------------------------------------------

**REPLY IN SUPPORT OF PLAINTIFF ANTHONY WADE'S PARTIAL SUMMARY JUDGMENT MOTION REGARDING HIS MALICIOUS PROSECUTION CLAIM AGAINST DEFENDANT JON GLADSTONE, AND HIS RELATED FAILURE TO INTERVENE CLAIM AGAINST DEFENDANT ALEXANDRU ANGHEL AND DEFENDANT JAMES BAEZ**
No. 16 Civ. 190 (PKC) (JO)

This is Plaintiff Anthony Wade's Reply filed in support of his Motion for Partial Summary Judgment on his malicious-prosecution claim against Defendant Jon Gladstone and related failure-to-intervene claims against Defendant Alexandru Anghel and Defendant James Baez.

**I.      Defendants do not contest that Gladstone commenced a proceeding against Wade for the purposes of the malicious-prosecution claim.**

Wade notes that Defendants' opposition does not challenge that Gladstone initiated a criminal proceeding against Wade. See Docket No. 95, passim; see also Stampf v. LIRR, 761 F.3d 192, 199 (2d Cir. 2014).

**II.      Favorable Termination of the Section 221.10 aggravated marijuana possession misdemeanor.**

Defendants claim that the aggravated misdemeanor marijuana possession charge that Gladstone initiated against Wade pursuant to Section 221.10 did not terminate in Wade's favor. This is incorrect.  It is well-established by the Second Circuit that a court weighing the favorable-termination prong of a malicious-prosecution claim must "separately analyze the charges claimed

to have been maliciously prosecuted," and Wade accordingly asks the Court here to analyze whether the DA's Office's declination to prosecute the Section 221.10 aggravated marijuana possession misdemeanor overcharge was a favorable termination to Wade separate and apart from the later-brought Section 221.05 simple-possession violation. See Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991) (discussing Janetka v. Dabe, 892 F.2d 187, 189-90 (2d Cir. 1989)). The Second Circuit had explained that the rule requiring separate, charge-specific analysis for the elements of a malicious-prosecution claim permits a civil rights plaintiff to challenge when a police officer "add[s] unwarranted misdemeanor charges to valid violation charges"—language that calls to mind Wade's experience here. Id.

Defendants argue that Posr and Janetka's separate-charge-analysis rule should not apply here because the ADA declined to prosecute Wade for the Section 221.10 overcharge. Docket No. 95 at 9. Stated differently, Defendants appear to take the position that the Second Circuit's separate-charge-analysis rule only applies when a plaintiff experiences a split verdict. However, insofar as the separate-charge-analysis rule for malicious-prosecution claims is meant to preclude officers from commencing unwarranted overcharges against individuals with impunity, it would make little sense to limit the rule to circumstances where a malicious prosecution is taken all the way to trial. See Posr, 944 F.2d at 100; Janetka, 892 F.2d at 189-90. This is particularly true when New York law recognizes that favorable termination of a specific criminal charge occurs in myriad ways so long as the termination of a specific charge is not inconsistent with the accused's innocence with reference thereto. See Cantalino v. Danner, 96 NY2d 391 (2001) (favorable termination of a charge is defined as a termination that is not inconsistent with a plaintiff's innocence).

Under Defendants' construction of Posr and Janetka, the driving point behind the separate-charge-analysis rule in malicious-prosecution claims—allowing individuals to seek to hold officers accountable when they maliciously overcharge them—would be subject to easy manipulation should the government drop such overcharges right before presenting them to a jury or right before a jury renders a verdict thereon. Under such circumstances, Defendants appear to say, the technical absence of a split verdict would render the separate-charge-analysis rule inapplicable.

The ill effects of a legal landscape that provided such easy exoneration for officers or prosecutors who maliciously overcharge simply because they managed to halt the constitutional violation just short of a split verdict are so legion they hardly need to be stated. A malicious overcharge places tremendous and corruptive pressure upon an accused to plead guilty a lesser charge that they might otherwise credibly contest due to the outsized and unjustifiable consequences that an unsupported overcharge poses to (1) the accused's liberty; (2) family court determinations against the accused; (3) the accused's right to public housing (as Wade powerfully experienced); (4) an accused's ability to maintain employment contingent upon criminal allegations; and more.

Courts have already implicitly rejected the illogic and harm threatened by Defendants' proposed limitation on the separate-charge-analysis rule through their application of the rule outside of split-verdict contexts. For example, in Fulton v. Robinson, 289 F.3d 188, 197 (2d Cir. 2002), the Second Circuit discussed the separate-charge-analysis rule in the context of a plaintiff's malicious-prosecution claim resting on certain charges being dismissed earlier in his prosecution under double-jeopardy principles. See id. (ultimately not fully undertaking the favorable-termination analysis relating to the dismissed charges because other aspects of the claim failed,

but suggesting that Posr and Janetka and did not proclaim them inapplicable due to the absence of a split verdict); McLennon v. City of NY, No. 13 Civ. 128 (KAM) (SMG), 2015 WL 1475819, at *7 (EDNY Mar. 31, 2015) (denying motion to dismiss based on favorable-termination prong when the charge supporting the plaintiff's malicious-prosecution claim was dismissed during a trial without being presented to a jury for verdict); see also Longo v. Ortiz, No. 15 Civ. 7716 (VEC), 2016 WL 5376212, at *5 (SDNY Sept. 26, 2016) (expressing skepticism that Posr's and Janetka's charge-specific-analysis rule would not apply to a situation where alleged favorable termination arises from unindicted charges); Ostroski v. Town of Southold, 443 F. Supp.2d 325, 336 (EDNY 2006) (declining to narrowly construe Janetka's charge-specific analysis rule for malicious prosecution claims and noting various factors that a court should consider).

Defendants also argue (somewhat contradictorily in light of their position that Posr and Janetka do not apply outside of the technical entry of a split verdict), that Wade did not obtain a favorable termination on the Section 221.10 overcharge because the DA's Office did not decline to prosecute it. But the record is clear that the prosecutor abandoned the factually unsupportable Section 221.10 misdemeanor overcharge—neither the "public place" or "more than 25 grams" elements of the aggravated misdemeanor exist—and never reviving it such that the abandonment's consistence with Wade's innocence of the Section 221.10 charge is patent. Exh. 12 (showing that the prosecutor abandoned the factually unsupported Section 221.10 misdemeanor charge and re-brought it as a Section 221.05 violation only); see N.Y. Crim. Pro. L. § 30.10 (discussing limitations period for charges); N.Y. Crim. Pro. L. § 40.40 (discussing when the separate prosecution of jointly prosecutable offenses is barred); see Mitchell v. City of NY, 841 F.3d 72, 79 (2d Cir. 2016) ("[T]he proceeding terminated in [the plaintiff's] favor when the District Attorney's Office declined to prosecute her[.]"); Stampf v. LIRR, 761 F.3d 192, at 201 (2d Cir.

2014) (stating that if declination to prosecute were not a favorable termination, "it would mean that malicious prosecution claims often could not be brought in the cases where the accusations had the least substance"). Stated differently, the DA's Office declined to prosecute the Section 221.10 overcharge because, as a matter of law, there was no probable cause to support it, and not due to some procedural infirmity that could theoretically have been "cured by amendment." See N.Y. Crim. P. L. § 170.35 (1)(a); see also N.Y. Pen. L. § 221.10(1), (2); Def. Resp. 56.1 ¶¶ 9 11 (admitting that Wade did not possess the cigarette in a public place and that it weighed less than one-eighth of an ounce, i.e., not more than 25 grams).

In Murphy v. Lynn, 118 F.3d 938, 951 (2d Cir. 1997), on analogous facts, the Second Circuit found that a district court properly found that a plaintiff satisfied the favorable-termination element as a matter of law unless the defendants could produce the prosecutor "to testify to some non-merits-based explanation for the failure to pursue the prosecution of [the plaintiff]" on the charges at issue. Here, insofar as Defendants admit that Section 221.10 was a factually unsupportable charge on this record, and insofar as it is inarguable that the Section 221.10 aggravated-misdemeanor charge is a more serious offense than a Section 221.05 simple-possession violation, Exh. 3 at 138:17-139:2, 140:22,-141:6, 169:24-172:7; Exh. 15 (Op. Order 49-11); Wade Memo at 15; Def. Resp. 56.1 ¶¶ 9, 11; N.Y. Pen. L. §§ 221.10(1), (2), Defendants are similarly unable to present any witness who would "ha[ve] the temerity to testify under oath" that the People had a lawful factual basis to revive the Section 221.10 charge against Wade after the October 2014 declination to prosecute. Murphy, 118 F.3d at 951. To do so, the witness or witnesses would have to testify that the back bedroom of Apt. 12B was a public place or that the marijuana cigarette weighing less-than-one-eighth of an ounce actually weighed more than twenty-five grams. See N.Y. Pen. L. §§ 221.10(1), 221.10(2). Accordingly, the Court would be correct in "decid[ing] the

favorable-temination question [in Wade's favor] as a matter of law[.]" Murphy, 118 F.3d at 951 (noting with favor the district court's colloquy with the parties in Murphy that "[e]very lawyer in this room, including the Court, knows what happened here"); see Smith-Hunter v. Harvey, 95 NY2d 191, 197 (2000) (holding that a prosecutor's abandonment of a charge constituted a favorable termination when it represents its final termination); cf. MacFawn v. Kresler, 88 NY2d 859, 860 (1996) (holding that a malicious-prosecution claim could not rest upon an abandoned criminal count that the People could still plausibly re-file).

**III. Lack of Probable Cause for the Section 221.10 aggravated marijuana possession misdemeanor.**

In addition, Defendants claim that Gladstone had arguable probable cause to commence a proceeding against Wade pursuant to New York Penal Law Section 221.10, which is an aggravated marijuana possession misdemeanor. However, Gladstone admitted to the contrary as noted above and in Wade's opening motion papers, and Second Circuit law is well-established that "in the context of a malicious prosecution claim, probable cause must relate to the specific crime charged in the criminal proceeding." Genovese v. Cty. of Suffolk, 128 F. Supp.3d 661, 669 (EDNY 2015) (citing cases). As in the context of favorable-termination review, the charge-specific-probable-cause analysis serves to address when an officer with cause to charge an easily provable violation instead charges something more serious "with the hope that proof of probable cause on the lesser charge would insulate the [officer] from liability for malicious prosecution on the unproved serious ones." DiBlasio v. City of NY, 102 F.3d 654, 658 (2d Cir. 1996) (citing Posr).

Here, again, Defendants admit that the Section 221.10 misdemeanor overcharge was incorrect—the marijuana cigarette which Wade was charged with possessing was not in a public place, compare Def. Resp. 56.1 ¶ 9, with Section 221.10(1); that it weighed less than one-eighth

of an ounce, compare Def. Resp. 56.1 ¶ 11, with Section 221.10(2); and that Gladstone commenced

the aggravated misdemeanor marijuana possession proceeding against Wade under Section 221.10

knowing that it was incorrect, Exh. 3 at 138:17-139:2, 140:22-141:6, 169:24-172:7. See Exh. 15

(Op. Order 49-11); Wade Memo at 15 (chart of the elements of Section 221.10(1) and Section

221.10(2) as compared against a Section 221.05 violation). It is thus beyond cavil that Gladstone

had no probable cause to commence a proceeding against Wade under Section 221.10 for an

aggravated marijuana possession misdemeanor.

**IV.    Wade suffered a cognizable deprivation of liberty as a result.**

Defendants argue that Wade is not entitled to summary judgment on his malicious-

prosecution claim because he did not suffer any cognizable injury as a result of the Section 221.10

overcharge. Docket No. 95 at 15. In so arguing, Defendants focus exclusively on whether Wade

suffered a cognizable liberty deprivation. Id.

A liberty-focused approach ignores that Wade's complaint alleges not only that the

malicious prosecution caused not only a liberty deprivation, but a related interference with his

person and property. See Lilakos v. City of NY, No. 14 Civ. 5288 (PKC) (LB), 2016 WL 5928674,

at *6 (EDNY Sept. 30, 2016), adopting in relevant part, Lilakos, No. 14 Civ. 5288 (PKC) (LB),

Docket No. 47 (stating that interference with an individual's person or property interests are

cognizable malicious-prosecution damages); see Minasian v. Lubow, 49 AD3d 1033, 1034 (3d

Dep't 2008) (recognizing the deprivation of property interest as a result of a criminal proceeding

without cause as cognizable malicious-prosecution deprivation). This is undisputed on this record.

Wade testified that he appeared in Kings County Housing Court with his aunt Gloria O'Connor

(pursuant to their agreement, known to NYCHA, that he resided in Apt. 12B) to challenge

NYCHA's pursuit of back rent for the padlocked Apt. 12B. Exh. 2 at 85:7, 87:5-18. Furthermore,

Defendants themselves argue to the Court that at least as of August 2014, it was NYCHA, and not them, that locked Wade out of Apt. 12B in the aftermath of the July 17, 2014, raid. The record contains an August 2014 NYCHA CFLA citing Wade's Section 221.10 aggravated misdemeanor overcharge as its basis, which was reasonably foreseeable to Gladstone when he knowingly overcharged Wade. At deposition, Wade described the expenditure of time and resources that his displacement from Apt. 12B and homelessness required of him. See Docket No. 13 (copy of August 2014 CFLA citing Wade's Section 221.10 aggravated misdemeanor overcharge); Def. Resp. 56.1 ¶ 26; Murphy, 118 F.3d at 945 ("The liberty deprivations regulated by the Fourth Amendment are not limited to physical detention.").

Wade also suffered a more "conventional" deprivation of liberty due to the overcharge in the form of at least one needless criminal court appearance. When Wade appeared in criminal court in November 2014 to answer for the Section 221.10 overcharge, he found that that charge— unsupported by probable cause—had been properly abandoned by the DA's Office and that a new Section 221.05 charge had been brought in its stead. Exh. 12 (DA file); Exh. 14 (court file). This development, and the court's interest in learning why Wade had been arrested on a Section 221.10 misdemeanor overcharge corrected to a Section 221.05 violation pursuant to a search warrant execution that yielded no positive results, prompted the court to adjourn the appearance on the Section 221.05 violation to December 2014 so that the prosecution could produce recordings relating to the CI operation on that date. Exh. 2 at 90:16. The confusion occasioned by the Section 221.10 overcharge and the prosecutor's abandonment thereof thus required Wade to return to court a second time to answer for the new summons. Exh. 14 at D917-18. Had Gladstone not knowingly and maliciously overcharged Wade, this adjournment and the second court appearance would not have been required.

Finally, it should be noted that Wade's privacy and reputational interests were greatly implicated by the malicious prosecution because the padlocking of Apt. 12B was an open, obvious and exceedingly long-term sign to the residents of 192 Sands Street—where Wade had lived since he was a little boy—that the NYPD's search warrant results were serious. Although the Section 221.05 violation was ultimately dismissed and deemed a legal nullity, this was only after roughly four months during which the residential community with which Wade associated most intimately throughout his life assumed from the padlocked Apt. 12B that Wade had gotten into very serious trouble—so serious that he had been summarily evicted—when he had not.

In summary, the liberty, property and privacy deprivations that Wade suffered as a consequence of the malicious prosecution were substantial and cognizable by law. If Wade's deprivations raise any issue of fact at all, it is as to damages, and not liability so long as the Court finds that Wade's deprivations resulting from the malicious prosecution are something "other than inconvenience (for which the law does not compensate)." Rivera v. City of NY, 40 AD3d 334, 340 (3d Dep't 2007). Wade respectfully argues that his summary eviction, the extended homelessness, the CFLA, the housing and criminal court appearances, the open and obvious humiliation in front of his lifelong friends and neighbors, and more, collectively amount to more than "inconvenience" for the purposes of making his malicious-prosecution claim legally cognizable.

## V.     Anghel and Baez failed to intervene.

Defendants do not contest that, if the Court finds that Wade has a malicious-prosecution claim against Gladstone as a matter of law, that Anghel and Baez had a reasonable opportunity to prevent it and failed to do so. Docket No. 95 at 16. Defendants only argue that Anghel and Baez cannot be liable for failure to intervene because it is their position that Wade has no malicious-

prosecution claim against Gladstone. To the extent that Wade argues he is entitled to summary judgment on his malicious-prosecution claim against Gladstone, he relatedly argues that he is entitled to summary judgment on his related failure-to-intervene claims against Anghel and Baez. Defendants' singular argument—that the Anghel/Baez failure-to-intervene claims fail if the Gladstone malicious-prosecution claim does—necessarily means that the opposite is true. In other words, given Defendants' effective argument that the claims rise and fall together, if the Gladstone malicious-prosecution claim succeeds, liability against Anghel and Baez for failure to intervene should enter for all the uncontested reasons stated in Wade's opening brief.

Dated:     September 21, 2017
           New York, New York

Ryan Lozar
*Attorney for Plaintiff Anthony Wade*
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562